Here to give you this honorable appellate court for the 2nd Judicial District is now sponsored by the Honorable Lincoln C. Brennan, presiding. Please be seated. Your Honor, the first case on the docket this morning is 2-21-0296, the people of the state of Illinois plaintiff's appellee v. Robert M. Stowe, defendant appellant. Argument for the appellant is Vicki P. Corliss, arguing for the appellee, Ms. Katrina M. Cooper. Ms. Corliss, when you are prepared, you may proceed. Good morning, Your Honors. May it please the Court and Counsel, my name is Vicki Corliss. I'm from the Office of the State Appellate Defender, arguing on behalf of Mr. Robert Stowe. This Court ought to reverse Mr. Stowe's conviction and order a new trial because the State relied on a despicable homophobic trope to present irrelevant and unfairly prejudicial other acts evidence to the jury. The other act was Mr. Stowe's possession of two provocative images of adult men found on his phone. Mr. Stowe, because Mr. Stowe was charged, was accused of sexually assaulting, abusing a 14-year-old boy, the police searched his phone looking for child pornography. They didn't find any. Instead, out of the over 900 images and videos they extracted from his phone, they found two images, each depicting a nude adult man. According to the State, Mr. Stowe's possession of these two images of adults showed that he was sexually attracted to men and that this proclivity was relevant to prove his sexual interest in JB, a 14-year-old boy. The notion that Mr. Stowe's sexual orientation had any bearing on whether or not he committed a sexual crime against a child is based on a discredited and debunked homophobic stereotype. Let me ask a question. Let's assume that we agree initially that it was arguably error to allow this in, at least in the State's case in chief, without something else happening. At the point in time when the defendant introduces over the objection to the State that he's married to a woman, does it not arguably become relevant at that point to discount the inference that he wouldn't be interested in a male? Your Honor, sexual orientation, gay or straight, under the facts of this case, is simply irrelevant. So the State was – would be correct to object under that scenario. I don't recall whether the State actually did object. I know the State was anticipating that he would claim that he was a happily married man, and this is why they needed to introduce those images, which were by proxy his – showed his attraction to men. But by that time, to Your Honor's point, this was later in the proceedings that the – or that Mr. Stowe said he was not gay. But again, the photographs were already introduced, so the defense had a blunt that impact somehow, and this was the way that they did so. But again, gay or straight, sexual orientation was simply not relevant to the case. So if – let's assume the photos were not introduced in the State's case in chief. If, in that scenario, the defendant introduced evidence that he was, quote-unquote, straight and married to a woman, at that point, would you concede that the photographs might be relevant or no? No, because again, in a case like this, where the crime has to do with a child, a defendant's sexual orientation is never relevant, okay? The State was – the State made age an issue here, because they charged him with a crime against a child. Even the other charge that was related to whether J.B. was allowed to consent, they presented evidence that the age of consent was 17. So again, his age, J.B.'s age, was an issue for the jury to consider. What authority do you cite for the proposition that you're stating? I'm aware that there are cases that say that, to the extent that psychologists say that pedophiles can be – or the type of pedophile can be broken down into two groups, I believe. One that's below 12 years of age, and one that relates to pubescent minors, say, from 12 to 16 or so. What did the State say or present to establish the relevancy of the correlation between male penises and the alleged sex act here? Nothing. They didn't present anything. They just wanted to use the large umbrella of males to establish that the pictures that they found on his phone, which by all accounts were of adult men, that these men were somehow in the same class as J.B., which is a 14-year-old boy, weighing between 70 and 100 pounds, was less than 5 feet, was, again, staying in a home that was established for minors. There was nothing to equate the two, Your Honor, that the State presented. I believe there was testimony by a police officer who examined the phone, and he was asked, did he find anything suspicious in that testimony. He related that he found the two photographs. Yes. Did the cross-examination establish the police officer as an expert on pedophilia? No, there was no such testimony. Did the police officer, through cross-examination or direct, indicate the basis of his rationale as to why it was suspicious? No. Again, no, there was no evidence to that. Did the trial court claim that the relevancy outweighed any prejudice? That's what the trial court claimed, but it did not elaborate as to what relevance these images had. Again, the idea is that these images are relevant because it established... So you're saying there was a claiming or a determination by the trial court, but there was no rational disintending? None that I found on the record, Your Honor. I have a question. In the motion to eliminate discussion, my reflection was that the State asserted that one of those photos was accessed contemporaneous to the alleged abuse. I'm sorry, Your Honor. That's not what the record showed. It was the allegation that it was maybe accessed at some point when he was at work, but not at the same time as the alleged act. At work on the same day or... No, not on the same day. I think it was weeks before. Oh. Well, thank you for that. Sure. I guess I want to also... But if I may. Sure. No evidence of that was introduced in the trial? No. There was none. Again, the evidence as far as what these images were was very lacking. It was just these two images. We don't know what part of the phone they were extracted from. Again, Mr. Stowe explained that they were sent as a text message from a friend, but that's all we have as far as where those images came from. I guess I just wanted to point out, too, that the state doubled down on the stereotype as far as what it argued to the jury when it said, quote, What is on his phone? New photos of a man with an erection. Why is that relevant? Because relevance is something that makes a fact of consequence more or less likely. So does this make it more or less likely that he was masturbating a child? It doesn't hurt, right? End quote. Wrong. It does hurt. The state essentially told the jury that Mr. Stowe molested this boy because he was gay. Again, as California courts have recognized, we have gone beyond this notion, and it is painful to find this battle still being fought. Now, that argument was in rebuttal. The state didn't touch the photos in their opening clause. Is that correct? That's correct. However, they did present the pictures, and they had the officer testify that they were relevant. But, again, the fact that it's in rebuttal makes it even more problematic because the defense doesn't have a chance to explain that or give the jury an alternative understanding. Well, I guess my point of saying it was in rebuttal is it was after the defense addressed the photos in its clause indicating that they were completely irrelevant. Right. And, again, they weren't just irrelevant. They were also unfairly prejudicial. Again, they were used to suggest to the jury that Mr. Stowe was somehow predisposed to commit the crime against a boy, and they also tapped into misconceptions the jury may have had about the role of sexual orientation in a case like this. The record, too, shows that the state likely harbored these misconceptions. If the court doesn't mind, I have another block quote I want to present because, again, I think it frames where the state's intention was with presenting these other acts. Quote, So if this was a photo of a female on the phone and it was a female victim, this would be less problematic. But where the victim is a male, which is against the traditional expectations of society, that a male wouldn't be attracted to another male, how do we prove that this was done for sexual purposes? Well, the photo shows that this was a class of individuals he may or may not be sexually attracted to. End quote. The fact that the state can reasonably make these remarks espousing their understanding of society's expectations of male sexuality shows just how insidious this bias and this prejudice was. And if the state is out there making, again, with no shame, making these comments to the court, we just don't know how the jury interpreted these images. But we do know that the images were calculated to inflame the jury to believe that Mr. Stowe was predisposed to commit the crime against a 14-year-old boy on account of the sexual orientation. Is this case essentially one-on-one? That's correct, Your Honor. So is this word against? Marbetta Phyllis was the witness. The supervisor? Yes. Told him to go and take care of the boy? Yes. So would that have any effect on what the jury would do insofar as credibility issues? I believe so, yes. And the case law suggests that, too. When it comes down to a credibility contest between two competing versions of events, reviewing courts find that the evidence is not overwhelming and that any evidentiary error will be considered reversible. So, yes. So, again, to that point, the error was not harmless here because it was a credibility contest. There was nothing inherently unbelievable about Mr. Stowe's testimony, and it was corroborated by other evidence, and the story remained the same from the moment he talked to the police officer at the facility to his testimony at trial. Again, credibility contests are supposed to start with balanced scales. Even when it's the defendant standing on one end. But here, the other act's evidence risked an improper tipping of the scales against Mr. Stowe before the jury even had a chance to consider his believability on his testimony. For these reasons, Your Honor, I would stand on my briefs and the arguments here today, and I would ask this Court to find that the trial court abuses discretion to use the images as other act's evidence and to prove its case that Mr. Stowe sexually abused a child. And I would ask this Court reverse this conviction and remand for a new trial. But I'm happy to answer any more questions. Justice McClure, any other questions? Yes, one, I think. And that is, the pictures that are the subject of this case, was there anything inherent in them that they would present some imagery or some thought other than Michelangelo's David? I'm not sure I... Well, I believe the photographs are of a penis. Yes. And I believe Michelangelo's David is in the nude. So it means if you're standing in front of the statue, you're looking at a penis, amongst other things. So is there anything that distinguishes the statue from the photograph? I don't think there was any sort of... At least to establish either a fantastic taste in art or some perversion. I think it's clear that the images were not presented to establish any sort of artistic interest that Mr. Stowe had in the male form. It was clear that these were introduced to show his interest in men in a sexual way. Well, unlike Michelangelo's David, the penises in the two photographs were erect, is that correct? That's correct, Your Honor. Justice Jorgensen-Dupin, any questions? No, but that's exactly what David shows. I have no additional questions. Thank you. You'll have an opportunity for rebuttal. Ms. Kuhn, if you're ready, you may proceed. Good morning, Your Honors. Good morning. Good morning, Counsel. Katrina Kuhn for the people of the State of Illinois. May it please the Court. The defendant was seen by his supervisor moving his hand on the victim's penis, and the defendant denied doing so. The images on the defendant's phone were admissible to show his intent to commit this offense for his own sexual gratification. May I ask you a question? Yes. If it were a man who molested a girl of the same age, would we ever find it relevant that the man had naked pictures of an adult female on his phone? Well, I think this case is unique. First answer that question. I think there is a distinction. The distinction is the distinction between men and women. The answer to the question is no, we wouldn't find that relevant, correct? I don't think it would be as relevant as these images are. Relevant at all, really. So why is it different here? It is different here because these images mirror the specific sexual act that this offense is based on. These images are not of David and are not of minor children. They are of adult males, and they portray a specific sexual conduct. What conduct other than an erect penis does it display? Well, they portray a specific sexual state. You're correct, Your Honor. They only show one person. They don't show two people. They portray a specific sexual image that is different from a, as you said, a David or a simple anatomical photo. And I'd also like to point out that the State here, there were 900-some images on the defendant's phone. The State did not attempt to introduce 900-some images. The State introduced two photos that were directly relevant. That was my question. The other 900 photographs, were any of them similar? Or were they, you know, pictures of his dog? I don't recall all of the content. I don't recall. So there may have been only two photos that even were available to be considered. Correct, correct. So doesn't that really weigh in favor of the defendant, that you found two photos, or the investigator found two photos out of 970 that portrayed a male? But I think what weighs in favor of the State is the fact that the State introduced two photos and that their introduction of evidence was not overly broad. It was narrowly tailored. Right, but that's because that's all you had. It wasn't that you had 50 and only introduced two. I see Your Honor's point, but the fact that he only had two photos doesn't, or he could have only had one photo, the question is whether these photos were relevant and were they, whether they were relevant to show his proclivities, as this Court has said. Proclivities to do what? Proclivities to his prior, as this Court has stated in Ressa and the cases cited in my brief, that prior conduct towards or persons or interest in persons in the same class. And for our purposes, the class is males who are sexually, who have reached sexual maturity. The victim here was a 14-year-old young man who had reached sexual maturity, as indicated by the evidence in this case. So you're considering the victim here as an adult, and that's your connection to the photographs? The connection, Your Honor, is that he is an adult for the purposes of reaching sexual maturity when compared to a prepubescent child. That is the distinction that the State is making. And to Justice McLaren's point earlier, the part of the State's argument in the motion in Lemonet that is key is that the State was arguing that the photos show that this is a class of individuals that defendant may or may not be sexually attracted to. That was the purpose of admitting this evidence. And I believe Justice Brennan asked a question about whether the images were accessed at the time of this incident. It doesn't really matter if they were. He didn't need to be looking at the images at the time. I think the fact that they were on his phone was what they were admitted for as relevant. And the trial court, respectfully, Your Honors, the trial court did not abuse its discretion in making this determination. Any prejudice that is claimed by the defendant must overcome the relevance of this evidence, and it needs to be unfairly prejudicial. I have no bearing on the case at trial. So any sex case between adults, you're going to be able to introduce naked pictures from the phone because they're the same class? Well, any sex case involving an adult would they be? So here you're saying that we're going to characterize the victim in this case as an adult male for purposes of saying that they're the same? A male who's reached sexual maturity, which could be a teenager as this child, as this young man is. So if it's a 25-year-old man alleged to have had a sexual offense against another 25-year-old man, if there's a picture of a male 25-year-old man on that phone, it's coming into evidence because it's the same class? Yes. They're adult males. And you're making that argument based on Ressa, Fretch, and Goumila. Goumila, yes, Your Honor. Which were evidence of interest in children related to child sex offenders. Yes. They were evidence of the same. But they made the finding of the same class. It didn't say that the class could only be children. It said, you know, evidence of the same victim or victims who were in the same class as the victim, persons in the same class as the victim. The class here, as the State argued and as the trial court agreed in its ruling, was the class of adult males or males who had reached sexual maturity. This was not a defendant who was preying on a child who had not reached sexual maturity. And the similarity and the correlation between the conduct that's at issue in this case in terms of the underlying conduct of the offense and the images is difficult to ignore. It is the – these images mirror the specific, you know, sexual act, when what defendant is accused of doing is a specific sexual act that is unique to men. You know, it is an act that is inherently, you know, done for sexual gratification. It's – and in terms of the prejudicial effect, the defendant argues – So one of the things the State argues is that we need these pictures to show that the touching was for the purposes of the sexual arousal or gratification. You just said that the act itself is – that's inherent in the act. So why do you need the pictures? I mean, if the jury or the fact finder credits the supervisor as having seen what she said she saw, you hardly need the photos to – I agree that you could affirm under harmless error. You don't even need the photos. I agree. This is a – I'm more focused on probativeness and prejudice. I mean, in that circumstance, they're probative. They're very marginally probative at best, but you can see the prejudice. I would respectfully disagree, Your Honor, that they are quite probative in that they are not simply photos of nude men. They are photos of nude men in a certain state with an erection, and that is what is at issue in this offense. They basically mirror the conduct at issue here that was witnessed by defendant supervisor and which defendant denies doing. And, you know, as to harmless error, the court had, you know, harmless error – this is a case that does not lend itself to multiple witnesses. You know, we have defendant's supervisor who provided, you know, clear testimony that she walked in, she saw a defendant performing an inherently sexual act. The defendant was looking down at his right hand. He was sitting next to the victim, holding the victim's penis and moving his hand up and down. That is what Ms. Phyllis witnessed. She was very upset. She immediately responded. She also saw a defendant who was holding his phone in his left hand, which defendant admits. Defendant later said that he should not have had his phone at that point. He should not have had his phone in that context, in that setting. That was a violation of a policy, but he still admitted that he had his phone in his hand. Defendant's story about that he was trying to – I'm sorry, what's the policy, that you don't take pictures of people's genitalia or that you don't have a phone when you are treating or working with patients? I believe the latter, Your Honor. The facility had a policy, I believe, and he admitted and he thought that was why he was being disciplined or removed or why the police were talking to him because he was playing games on his phone. I don't think the police would have been called for that. But the defendant then conjured a story about there being a mark or a sore on the victim's penis, that he was worried about the victim having some injury. He had multiple opportunities to report this to his supervisor. He did not. Well, the redness on the penis was observed by other people besides the defendant. So he said conjuring the story. There was slight redness, but he said that he was holding the victim's arm because he saw a sore. A nurse, Nurse David Heller, said there was a slight redness, but there was no lesion or no mark. And defendant initially, as I would direct you to the people's brief, the defendant's story wavered in the three different recordings of his speaking to officers. Ms. Phyllis said that defendant was a good employee. She would have no reason to make up any conflict or anything between them. Can I go back to this class issue? Yes. In Ressa, in French, in Gumilla, the conduct that's charged, if you will, is something that is never legal. I understand. Sexual conduct as it relates to children. I mean, sexual conduct between mature males can be legal. Can be legal with consent. Of course, but doesn't the pictures in this class issue, isn't it dramatically different when it's a child as opposed to just an adult circumstance where consent is the issue? In other words, if I'm charged with, if a man is charged with raping another man, let's say the person is drugged and sexually assaulted, I'm not sure that the holdings in those cases would apply with equal force simply because there was a male with an erect penis on the phone of the alleged perpetrator in that circumstance. Isn't there something about the child aspect that focuses the class discussion in those cases? Those cases do all involve child proclivities and child-related crimes. And what sought to be introduced was per se illegal under all circumstances as well, right? Whereas here, the possession of a male adult with an erect penis is not illegal or impermissible. And as argued in my brief, relevance is a relative consideration. As the similarities increase, the probative value increases. As Donahoe states, evidence of other acts needs to have threshold similarity to the crime charged. And as the similarities increase, the probative value increases. The trial court in this case found that the relevance in this case – Donahoe relates to acts, not pictures, right? Pardon me? Donahoe relates to acts, not pictures. Well, in this case, the pictures were considered evidence of defendant's other acts, meaning other acts or other – it was admitted as other acts of evidence under the umbrella of other acts or other crimes. I mean, the pictures here do not depict an act, but they are admitted under the legal theory of defendants' other acts, other crimes, other wrongs. And agreeing that these pictures themselves are not inherently illegal to possess, they are – the rule 404B of other acts and the stability of other acts to show – to prove any material fact, including intent, and to show that the act – this act was not performed inadvertently. Defendant admitted he was with the victim. And your Honor, I'd like to again point out that in closing argument, the defendant was – or the State was – was responding to – in rebuttal, was responding to the defendant's own closing argument. Are there any more questions I could answer for you? Thank you, Your Honors. Justice McClaren. Justice Jones. I have none. Thank you. Thank you very much, Ms. Kagan. Oh, thank you. Thank you. Your Honor, for all those reasons, we ask that the – we ask that the trial court's judgment be affirmed. Thank you. Ms. Gores. Your Honor, there's a list of questions. I have a question. Okay. I have no questions. Are you aware that there's a logical fallacy called correlation does not prove causation, and anybody that attempts to claim it is declaring or stating a fallacy of logic? We have a statistician in the family, so yes, I am aware of that. How similar are these acts, other acts, in relation to the act in question in this case? They are not similar at all. I have no other questions. How do you distinguish or address the argument that Ressa, Fretch, and Kubilla classed class? I think Your Honor did so when questioning counsel. Those cases have to do – the class in those cases had to do with the children that were involved in those cases, and the other acts of evidence that were presented also related to children. In this case, we have the State introducing evidence of men and trying to use that in a crime against a child. The State can't have it both ways, in one sense claiming that, oh, J.B., just a male, just a male, and then they're charging it, the crime, that J.B. is a child, and throughout the entire trial they're calling – they're bringing in evidence about his age, how young he is. That's just dubious, Your Honor. It's clear that the class is the images, and J.B. do not belong in the same class. As it relates to harmless error, it isn't exactly just one person versus another person. There are some inconsistencies in terms of how the defendant describes when he noticed sore, for example, whether he had to be within arm's reach during a masturbatory activity. Aren't these perhaps, for lack of a better way of phrasing it, examples of consciousness of guilt that might add to the one versus one situation? I disagree, especially with the idea that there was something nefarious about him sitting on the tub. There was another employee, I believe his name was Andrew Miller, who explained that it was male staff. It wasn't that he – I don't think there's anything nefarious that he was sitting there, he was permitted to. I think that's clear. It's just – did he not suggest that that was something that he was supposed to or had to do at one point? That he had to be within arm's reach of J.B., yes. And, again, another employee who testified said that when it's male staff and we're in the bathroom with J.B. when he's doing this, we also sit on the tub. It's the women who choose – who may choose, like Marvetta said, she would stand by the door, which, again, goes to the idea that – how she may have misinterpreted what was happening because she thought if J.B. was doing this that anybody would be standing at the door. But it's clear that even the male staff would be still trying to be within arm's reach of J.B. even at that time. So I guess the inconsistencies are not so – don't really defeat his main explanation is that he was not touching J.B. in a sexual way. He was reaching for his arm. His back was turned, so he didn't know when Marvetta came in. So he couldn't say, well, my hand was actually here or both hands. Whether two hands were on his phone or not, the idea is that his hand was never on J.B.'s private area. Justice McClary, any other questions? Justice Ginsburg? We thank both parties for their arguments this morning. The matter will be taken under advisement and a decision will be rendered in due course.